UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
|---|---|---|---|
| Title | United States of America v. Tahawwur Hussain Rana | | |

| Present: The Honorable | Jacqueline Chooljian, U.S. Magistrate Judge | |
|---|---|---|
| Kerri Hays | n/a | n/a |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Government: | | Attorney Present for Extraditee |
| none | | none |

**Proceedings:** (In Chambers)

**ORDER DENYING MOTION FOR RELEASE**

**I.    Background**

This is an extradition case in which the Government of the Republic of India seeks the extradition of Tahawwur Rana (alternatively, "Rana," or the "Extraditee") on multiple charges, including murder and conspiracy to commit murder.  On July 21, 2020, after extensive briefing and oral argument, this Court issued a lengthy Order Granting the Government's Request for Detention ("July Order") based on the risk of flight, which it incorporates into/attaches to this Order.  (Docket No. 44 in 2:20-mj-02630 [MJ Case]).  Currently pending before the Court is the August 11, 2020 Motion of Tahawwur Rana for Release ("Motion")[1] and the Extraditee's November 25, 2020 Supplemental Memorandum in support of the Motion ("Supplement") (Docket No. 70; MJ Case Docket No. 50), which the Government has opposed (Docket No. 71 ["Supplemental Opposition"]; MJ Case Docket No. 53 ["Opposition"]), and to which Rana has replied (MJ Case Docket No. 54 ["Reply"]).  No party has requested a hearing on the Motion.

The Extraditee essentially argues that he should be released on certain conditions because (1) the provisional arrest warrant on which he is held (MJ Case Docket Nos. 1, 2) – a warrant based on the Complaint for Provisional Arrest with a View Towards Extradition (MJ Case Docket No. 4-1) ("Complaint") – assertedly does not rest on a showing of probable cause supported by competent

///
///
///

---

[1] The Motion is supported by a Memorandum, Declarations of Iemann Rana (one of the Extraditee's daughters) ("I. Rana Decl.") and Mushraf Jahan (the Extraditee's mother-in-law) (Jahan Decl.), and a Supplemental Declaration of Iemann Rann (I. Rana Supp. Decl.).  (MJ Case Docket Nos. 50-51).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
| Title | United States of America v. Tahawwur Hussain Rana | | |

evidence and thus violates the Fourth Amendment;[2] (2) additional proposed measures address the Court's concern that Rana poses a risk of flight if released; and (3) he may be at significant risk of reinfection with COVID-19 due to his chronic health issues and the current conditions at the Metropolitan Detention Center (MDC) where he is housed.[3] (Motion at CM/ECF Page Nos. 2, 6-8, 9-10; Supplement at 1-3).

II. Discussion

    A. **Provisional Arrest Warrant and Alleged Probable Cause Requirement**

The Extraditee argues that he should be released because the Complaint supporting the provisional arrest warrant on which he was arrested and is currently being held, fails to provide competent evidence establishing probable cause as required by the Fourth Amendment.[4] (Motion at CM/ECF Pages 6-8). The Government responds that any claims regarding the provisional arrest have been mooted by the issuance of the formal request for extradition (see Docket Nos. 56, 66) but that, in

---

    [2]Absent a treaty prohibition, even if the Extraditee were ordered released on this basis, it may be that the Government could immediately seek another provisional arrest warrant on the same charges. See Collins v. Loisel, 262 U.S. 426, 430 (1923) ("It has been consistently held under the treaties with Great Britain and other countries, that a fugitive from justice may be arrested in extradition proceedings a second time upon a new complaint charging the same crime, where he was discharged by the magistrate on the first complaint or the complaint was withdrawn."); Orellana v. Parks, 2003 WL 1960268, *3 & n.3 (S.D.N.Y. Mar. 25, 2003) (United States entitled to commence new extradition proceeding on same charges after original proceedings dismissed based on finding that provisional arrest warrant defective because complainant prosecutor assertedly made statements on information and belief without setting forth source of information and grounds for belief) (citations omitted).

    [3]The Extraditee originally also argued that release was appropriate because more than 60 days had passed since Rana's provisional arrest without the requisite showing that the executive authority of the United States had received the formal request for extradition and requisite supporting documents (Motion at CM/ECF Page Nos. 2, 8-9), but – after his later receipt of the formal extradition request – indicated that the 60-day requirement appears to have been satisfied (Reply at 2). Accordingly, the Court will not further address the parties' contentions on this issue.

    [4]The Extraditee focuses on the asserted lack of competent evidence to support the factual allegations in the Complaint but does not argue that the alleged facts, if so supported, would otherwise be insufficient to establish probable cause. See Motion at CM/ECF Page 6-8; Reply at CM/ECF Page 7 ("The problem is not that the complaint is based on [the Assistant United States Attorney's] 'information and belief' or that it lacks detailed factual allegations. The problem is that . . . the [] Complaint does not support its allegations with 'competent evidence,' as the Fourth Amendment requires.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
|---|---|---|---|
| Title | United States of America v. Tahawwur Hussain Rana | | |

any event, the Complaint satisfies the probable cause requirement. (Opposition at CM/ECF Pages 8-9, 12-15).

First, as the Extraditee was arrested on a warrant issued based on a complaint for provisional arrest and is currently being detained based on the same, and as no ruling has been made on the pending formal extradition request (which is in the briefing stage), the Court finds that the issuance of the formal request for extradition – as to which no judicial determination has yet been made/no warrant has been issued – does not moot the Extraditee's claim that the Complaint does not provide competent evidence to establish probable cause. See Caltagirone v. Grant, 629 F.2d 739, 750 (2d Cir. 1980) (legality of provisional arrest not moot under capable of repetition yet evading review doctrine, despite issuance of second arrest warrant based on formal extradition request where court had not yet determined whether formal extradition was legally adequate). Although the Government cites authority which suggests otherwise (Opposition at CM/ECF Pages 8-9), this Court – like the Extraditee (see Reply at CM/ECF Pages 6-7) – concludes that such cases either are not persuasive or are distinguishable. See United States v. Yee-Chun, 657 F. Supp. 1270, 1271 n.1 (S.D.N.Y 1987) (stating in footnote, without analysis, that formal extradition request rendered challenges to validity of provisional arrests moot); In re Extradition of Taylor, 2020 WL 3893049, *1 (D. Mass. July 10, 2020) (stating, without analysis, that submission of formal request for extradition to State Department effectively mooted any issues relating to the legitimacy of the provisional arrest warrants); Martinez v. United States, 828 F.3d 451 (6th Cir.) (en banc) (finding, after probable cause determination made on formal extradition request, that challenge to provisional arrest moot), cert. denied, 137 S. Ct. 243 (2016).

Second, although there is no binding precedent on the issue, the parties appear to agree that a complaint for provisional arrest must be supported by probable cause.[5] (Motion at CM/ECF Pages 6-8; Opposition at CM/ECF Page 7).[6] The Court assumes, without deciding, that such is the case. See

---

[5] Probable cause to arrest exists when there is evidence that would warrant a person of reasonable caution in the belief that a crime has been committed by the accused. Wong Sun v. United States, 371 U.S. 471, 479 (1963). It is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules. Illinois v. Gates, 462 U.S., 213, 232 (1983). The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citations omitted).

[6] Article 12 of the governing treaty with India ("Extradition Treaty") – which governs provisional arrests – does not require a showing of probable cause. While the Government acknowledges there is a "probable cause requirement" (Opposition at CM/ECF Page 13), it asserts, without analysis or any reference to authority, that "the probable cause standard for a provisional arrest is not identical to that which is required for a domestic criminal arrest" (Opposition at CM/ECF Page 13 n. 4). As the Government notes that any such alternate standard "is not relevant for consideration here" (Opposition at

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
|---|---|---|---|
| Title | United States of America v. Tahawwur Hussain Rana | | |

Parretti v. United States, 122 F.3d 758, 770-73 (9th Cir.1997) (Fourth Amendment requires that provisional arrest warrant be supported by probable cause and may not rest solely on existence of foreign arrest warrant), decision withdrawn and appeal dismissed on other grounds, 143 F.3d 508 (9th Cir.1998) (en banc) (dismissing appeal based on fugitive disentitlement doctrine), cert. denied, 525 U.S. 877 (1998);[7] Caltagirone, 629 F.3d at 747 (2d Cir. 1980) (treaty required provisional arrest warrant to be supported by probable cause but standard could be met by a more streamlined/lesser degree of formality than that required at extradition hearing); In re Extradition of Russell, 805 F.2d 1215, 1217 (5th Cir. 1986) (assuming without deciding that treaty required provisional arrest warrant to be supported by probable cause and affirming finding that magistrate had enough evidence before him to show probable cause); Sahagian v. United States, 864 F.2d 509, 513 n.4 (7th Cir. 1988) (declining to decide whether foreign country must show "full probable cause" for provisional arrest as probable cause showing to support fugitive's arrest and detention had been made); In re Extradition of Beresford-Redman, 2010 WL 5313494, *3-*6 (C.D. Cal. Dec. 17, 2010) (discussing/collecting cases addressing whether provisional arrest warrant must be supported by probable cause and declining to decide same because provisional arrest warrant in such case was amply supported by probable cause).

Third, this Court addresses the Extraditee's claim that the allegations of the Complaint are not supported by competent evidence establishing probable cause as the Fourth Amendment requires and that he should therefore be released. In support of such claim, the Extraditee relies on four cases – the withdrawn panel decision in Parretti, 122 F.3d at 773-76; In re Extradition of Beresford-Redman, 2010 WL 5313494 at *4-*6; In re Extradition of Sainez, 2008 WL 366135, *20 (S.D. Cal. Feb. 2, 2008); and In re Extradition of Orellana, 2000 WL 1036074, *7-*9 (S.D.N.Y. July 26, 2000). The Court discusses each such case below.

In Parretti, 122 F.3d at 773-76 the Ninth Circuit panel found that the government had failed to make the evidentiary showing required to obtain a provisional arrest warrant because all the government presented was the foreign magistrate's "naked allegations" of fact and the government presented no affidavits, deposition testimony, or other competent evidence that could have provided the issuing judge with a substantial basis for concluding that probable cause existed. As discussed below, the Complaint in this action provided more than the "naked allegations" at issue in Parretti and is not devoid of "competent evidence" to support probable cause. Accordingly, aside from having been withdrawn and having no precedential value, the Court views Parretti to be factually distinguishable.

In In re Extradition of Beresford-Redman, 2010 WL 5313494 at *4-*6 – a case in which Mexico sought to extradite Beresford-Redman for aggravated homicide of his spouse – the magistrate judge

---

[6](...continued)
CM/ECF Page 13 n.4), the Court does not further address the issue and assumes, without deciding that the probable cause requirement in this case flows from the Fourth Amendment.

[7] As the Ninth Circuit panel decision in Parretti has been withdrawn, it is not binding precedent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
|---|---|---|---|
| Title | United States of America v. Tahawwur Hussain Rana | | |

found that the provisional arrest complaint was "amply supported by probable cause" and "contain[ed] considerable evidence establishing probable cause," noting that it referenced multiple sworn statements of witnesses establishing, among other things, that Beresford-Redman and the victim were having marital problems because he was having an affair and had been arguing, emails confirming the affair, a handwritten statement of witnesses who heard screams, cries for help which sounded like a woman in distress and banging from the couples' hotel room, sworn statements of hotel/security personnel regarding interactions with Beresford-Redman detailing various suspicious events and the discovery of the victim's body, sworn interview statements of Beresford-Redman, and the results of forensic expert examinations of various locations and the autopsy of the victim.  The competent evidence supplied in the complaint in the Beresford-Redman far exceeds the quantity and quality of competent evidence supplied in the instant case.

In In re Extradition of Sainez, 2008 WL 366135, at *20, – a case in which Mexico sought to extradite Sainez for homicide and battery – the fugitive, relying on the panel decision in Parretti, argued that the request for the issuance of the arrest warrant in Mexico and the Mexican arrest warrant itself – both of which were offered in support of the formal request for extradition – did not comport with the Fourth Amendment because they were based on unsworn allegations.  The court was not asked to consider whether the complaint for provisional arrest warrant was unsupported by competent evidence or otherwise deficient.  Referring to evidence submitted in support of the request for extradition the court rejected Sainez's challenge and distinguished Parretti, noting that in Sainez, Mexico, through the Government, had provided "the actual arrest warrant as well [as] other documentary evidence including witness statements and Ministerial Attestations and thus ha[d] presented much more to support its request for extradition than just the *existence* of an arrest warrant, as was the case in Parretti."  It then referenced its earlier analysis of whether probable cause existed to support the request for extradition and concluded that "sufficient competent evidence ha[d] been provided to permit [it] to independently find that probable cause exist[ed] to believe that [Sainez] committed the offenses charged."  Sainez provides some guidance on what constitutes "competent evidence" sufficient to support a probable cause determination but is not particularly persuasive in advancing the Extraditee's case here.  In short, while the competent evidence offered to support the formal request for extradition in such case may be weightier than the evidence offered to support the Complaint for provisional arrest in the instant case, this is not surprising or significant given the different procedural postures.

Finally, the Extraditee also relies upon In re Extradition of Orellana, 2000 WL 1036074 at *7-*9 – a case in which Mexico sought to extradite Orellana for homicide. (Motion at CM/ECF Page 6, 8). The complaint in Orellana – which was presented by an Assistant United States Attorney on information and belief –  indicated that the Mexican warrant was based on (1) a sworn statement by the decedent's cousin that, on the day before the victim's death when she last saw the victim alive, the victim had been in the company of Orellana who had been upset because he had learned that the victim had an extramarital affair with another man; (2) the determination by a forensic medical specialist, who had performed an autopsy on the victim that her cause of death was asphyxia by hanging; and (3) Orellana's confession to a prosecutor that he had murdered the victim and then fled to another country.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
| Title | United States of America v. Tahawwur Hussain Rana | | |

Notwithstanding the foregoing, the magistrate judge found no competent evidence had been presented assertedly because neither the source of the information nor the grounds for the Assistant United States Attorney's belief had been provided in the complaint. This Court disagrees with the magistrate's determination in Orellana and notes that after such ruling, the United States immediately initiated new extradition proceedings, a probable cause finding was made, and Orellana was removed to Mexico. See Orellana v. Parks, S.D.N.Y. Case No. 1:01-cv-02126 (Docket No. 9); Orellana v. Parks, 2003 WL 1960268, *3 (S.D.N.Y. Mar. 25, 2003).

     This case falls somewhere between Parretti and Beresford-Redman.[8] As detailed in the July Order, the Complaint recites alleged facts underlying the criminal charges enumerated in the India warrant – describing in some detail the activities of David Coleman Headley and the Extraditee, including the substance of communications between and activities involving the two – with limited express attribution. (Complaint at 3-9; July Order at 4-7). The Complaint notes that the referenced alleged facts "include those developed in United States v. Kashmiri, Case No. 09 CR 830, in the United States District Court for the Northern District of Illinois" (Complaint at 3 n.2), that "according to evidence presented at Rana's trial" the intervention of law enforcement prevented certain criminal acts in Denmark (Complaint at 9 n.7), that Headley pleaded guilty to multiple specified federal charges, agreed to cooperate, and testified for the prosecution in Rana's trial in the Northern District of Illinois (Complaint at 9), and that at least certain specified information incriminating Rana was "[a]ccording to Headley" (Complaint at 7). Although not otherwise expressly stated in the Complaint, the Court views it to be consistent with common sense and reasonable to infer in light of what is expressly stated in the Complaint – that Headley/his referenced testimony at Rana's trial is the source of the information which refers to Headley's activities and Headley's interactions with Rana and that it constitutes "competent evidence" for purposes of the Complaint. As the activities, communications, and interactions of Headley with Rana which are detailed in the Complaint are sufficient to establish probable cause that Rana committed at least one of the charges that is the subject of the Complaint and warrant issued in connection therewith, the Court finds that it comports with the Fourth Amendment.[9] However, this

---

    [8]The Government cites, *inter alia*, In re Extradition of Boeyink, 2004 WL 6074945, *2-*3 (E.D. Va. Jan. 28, 2004) in support of its position that it has provided sufficient competent evidence to support a probable cause determination. In such case, the court referenced alleged facts regarding offense conduct which were in the complaint for provisional arrest warrant and found, without referencing any attribution or source of information, that there was probable cause to support the provisional arrest. The Complaint in the instant action provides more competent evidence than that described in Boeyink,

    [9]As noted above (see supra note 4), the Court reads the Motion to challenge probable cause based only on the asserted lack of "competent evidence" to support the factual allegations in the Complaint and accordingly does not engage in a detailed analysis of whether the factual allegations in the Complaint, if supported by "competent evidence," establish probable cause. To the extent the Court has misunderstood and the Extraditee intends more broadly to argue that the factual allegations, even if

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
|---|---|---|---|
| Title | United States of America v. Tahawwur Hussain Rana | | |

finding is limited to the requirements for provisional arrest (Article 12 of the treaty) and does not extend to the ultimate certification of Rana's extraditability, which will be made by the Court following an extradition hearing and based upon certain documents and other evidence certified and submitted in accordance with Articles 9-10 of the Extradition Treaty.

    **B.**    **Risk of Flight**

As noted, the Court previously ordered the Extraditee detained, notwithstanding his presentation of a robust bail package and proffered conditions which would significantly mitigate the risk of flight, because it could not find that he had negated the risk of flight as required to release him on bond. (July Order at 22-24).[10] With respect to the then proposed third party custodian – the Extraditee's daughter who the record then reflected was to remotely pursue two advanced degrees – the Court stated: "[I]t is not clear to the Court that any human – even one as accomplished as the Extraditee's daughter – could adequately perform the requisite functions of a third party custod[ian] while simultaneously pursuing two advanced degrees." (July Order at 23 & note 29). The Extraditee now presents assertedly new information relating to the foregoing proposed third party custodian, proffers a new proposed co-third party custody, and suggests location monitoring as a condition of release. He contends that the foregoing items, in addition to the previously proposed bond, address the Court's concerns and negate the risk of flight.

First, the Extraditee notes that his proposed third party custodian daughter's coursework is entirely online because of the pandemic and that while she will be studying intensely, her studies will occur entirely at home – "meaning that she will be ideally placed to ensure that her father does not violate his release terms." (Motion at CM/ECF Page No. 9; I. Rana Decl. ¶ 2; I. Rana Supp. Decl. ¶ 2). This is not materially new information and does not alter the Court's original analysis. The July Order reflects that the Extraditee's daughter would be pursuing her degrees "remotely" (July Order at 23, note 29) and the Court presumed she would be doing so from a home she would share with the Extraditee. This does not alter the Court's view that the requisite focus and intense study called for by the remote pursuit of two advanced degree programs would not be compatible with maintaining the requisite degree

---

[9](...continued)
supported by "competent evidence," are insufficient to establish probable cause, the Court disagrees. Based on the factual allegations in the Complaint which are pretty clearly attributable to Heathley, the Court finds that the Complaint establishes probable cause to have arrested the Extraditee on at least one of the charges in issue. However, as indicated above, this finding is limited to the requirements for provisional arrest and does not extend to the formal request for extradition as findings relating to the latter will be made after consideration of the parties' pertinent submissions and a hearing.

[10]The Extraditee proffered six pieces of real property owned by family and friends having in excess of $1.5 million in equity, $18,000 in cash from family members, and unjustified affidavits of surety totaling $140,000 from multiple family members. (July Order at 23 & n.28).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
|---|---|---|---|
| Title | United States of America v. Tahawwur Hussain Rana | | |

of focus and attention on the Extraditee – even in the same apartment/household – to competently fulfill the responsibilities of a third party custodian.

      Second, the Extraditee proposes a new third party custodian – his mother-in-law, Mushraf Jahan – who is willing to serve as a co-third party custodian along with the Extraditee's daughter.[11] (Jahan Decl. ¶ 1, 4). The Extraditee's mother-in-law is a United States citizen and a current resident of Illinois. (Jahan Decl. ¶ 2). If appointed to be a third party custodian for the Extraditee, she is willing to move to California to live with the Extraditee and his daughter and represents that she can and would devote herself full time to her custodianship duties. (Jahan Decl. ¶ 4). While the Court appreciates the sacrifice that Ms. Jahan has expressed a willingness to make, the Court is not persuaded that she – individually or in combination with her granddaughter – could ensure the Extraditee's compliance with conditions of release/otherwise adequately fulfill the responsibilities of a third party custodian.

      Third, the Extraditee argues that the Court could impose location monitoring as a condition of release and that such a condition – combined with the proposed bond/other proposed conditions – would negate the risk of flight. (Motion at CM/ECF Page No. 10). Again, this is not something new and was previously considered by the Court. Although perhaps not expressly discussed during the prior bail proceedings or in the July Order, the Court, prior to issuing the July Order, explored whether, if the Court set a bond calling for location monitoring/an ankle bracelet with GPS – Pretrial Services in Los Angeles and/or Northern California could accommodate such a condition since, in light of the pandemic, Pretrial Services has largely, if not entirely, shifted to a telephonic verification system to avoid health risks attendant to in-person contact with supervisees/physically placing a location monitoring bracelet on a supervisee. The Court was advised by Pretrial Services that at least at that point in time, Los Angeles and Northern California could accommodate such an order in light of the nature of this case and the exceptional circumstances involved. Notwithstanding its consideration of such information, the Court ultimately concluded that even a location monitoring condition combined with the proposed bond/other conditions would not negate the significant risk of flight. The Court's view has not changed.

      **C.**    **Risk of Reinfection with COVID-19**

      In the Supplement, the Extraditee essentially argues that he should be released because he may be at significant risk of reinfection with COVID-19 due to his chronic health issues and the current

---

[11]The July 1, 2020 updated Pretrial Services Report reflects Pretrial Services spoke with the Extraditee's mother-in-law – identified therein as Mushrah Jahni – on June 30, 2020 and learned the following additional information beyond that reflected in Jahan Declaration: She was born in India and arrived in the United States around 2001, received a green card, and became a citizen four to five years ago. She has resided at a specified address in Illinois for approximately two years, but was then in Pakistan with family. She has never worked but her family owned land in Pakistan. She had been trying to return to the United States since May 2020 but, due to the pandemic, there had been no flights from Pakistan to the United States. She is nearly 79 years old.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:20-cv-07309-DSF-JC | Date | December 10, 2020 |
|---|---|---|---|
| Title | United States of America v. Tahawwur Hussain Rana | | |

conditions at MDC. Assuming that the Extraditee is indeed especially vulnerable to reinfection with COVID-19 at MDC, he does not explain how such factual circumstance affords a legal basis for his release here. To the extent such facts are offered to establish the existence of a special circumstance to overcome the presumption against bail in extradition cases, the Court has already found that the Extraditee's serious deterioration of health while incarcerated constitutes a special circumstance overcoming such presumption. (July Order at 17-19). To the extent such facts are offered to suggest that the Extraditee's ill health and vulnerability to further illness render him non-dangerous, the Court has already found that he does not present a current danger to the community. (July Order at 20-21). To the extent such facts are offered to suggest that the Extraditee is not a flight risk, he fails to explain how that is the case. In short, the Court is not persuaded that the Extraditee's risk of reinfection with COVID-19 affords any legal basis for his release beyond that which the Court has already considered and addressed in its July Order.

**III.     Order**

It is therefore ordered that the Motion is denied.

IT IS SO ORDERED.