```
1  TRACY L. WILKISON
   Acting United States Attorney
2  CHRISTOPHER D. GRIGG
   Assistant United States Attorney
3  Chief, National Security Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
        1200 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone: (213) 894-0721
        Facsimile: (213) 894-0141
7       E-mail:    John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9
```

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-CV-07309-DSF (JC) |
|---|---|
| Plaintiff, | UNITED STATES' SURREBUTTAL IN SUPPORT OF ITS REQUEST FOR CERTIFICATION OF EXTRADITION; DECLARATION OF JOHN J. LULEJIAN |
| v. | |
| TAHAWWUR HUSSAIN RANA, | |
| A Fugitive from the Government of the Republic of India. | Hearing Date: June 24, 2021<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom of the Honorable Jacqueline Chooljian |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, and Assistant United States Attorney John J. Lulejian, hereby files its Surrebuttal in Support of its Request for Certification of Extradition.

This Surrebuttal is based upon the attached memorandum of points and authorities, the files and records in this case, including those

\\
\\

which are under seal, and such further evidence and argument as the Court may permit.

Dated: April 12, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

*/s/ John J. Lulejian*
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The claims RANA presents in his Surreply are virtually identical to the ones that he presented in his Opposition to Extradition. In his Surreply, RANA again attempts to circumvent the plain language of Article 6(1) of the U.S.-India Extradition Treaty (the "Treaty") and the clear delineation of the negotiating partners' intent behind that Article by, inter alia: (1) ignoring Supreme Court precedent directing the Court to give deference to the negotiating history of the treaty; (2) wrongfully conflating the two distinct concepts of dual criminality and non bis in idem ("non bis") contained in the Treaty; (3) inappropriately reading complex U.S. constitutional doctrine into an international agreement whose partners did not contemplate such inclusion; and (4) attempting to gain benefit from David Coleman Headley's ("Headley") plea agreement despite its explicit language prohibiting such reliance. As detailed below, each of these claims is meritless.

The Treaty's meaning is derived the document itself, its drafters' intent, and longstanding principles of extradition law and treaty interpretation. The plain language of Article 6 of the Treaty, its technical analysis, and the relevant legal doctrine direct the Court to apply the elements-based test from Blockburger v. United States, 284 U.S. 299 (1932), to determine whether RANA was previously tried for the same offenses for which India seeks his extradition. (See Dkt. 67 at 51-56; 79 at 18-47.) Crucially, RANA fails to dispute that, if this test applies, Article 6 does not bar his extradition.

RANA also seeks to cast doubt on the issue of probable cause by downplaying the ample evidence in support of India's criminal charges contained in Headley's testimony presented at RANA's U.S. criminal trial. This evidence was based on Headley's personal knowledge and made against his own penal interest. Even if it were appropriate for RANA to attack Headley's credibility in this extradition proceeding (which it is not), RANA fails to identify any evidence in the record that obliterates India's presentation of probable cause. (See Dkt. 67 at 45-50; 79 at 55-58.)

Therefore, the Court should certify RANA's extradition to India on the offenses for which his extradition has been sought.

## II. ARGUMENT

### A. Article 6 of the Treaty Does Not Bar RANA's Extradition

RANA's assertions that Article 6 bars his extradition to India are without merit. (See Dkt. 87 at 6-16.) RANA ignores critical Treaty language and case law guiding the interpretation of Article 6. (See id. at 7-8.) The United States has briefed these issues at length and will limit its present discussion to identifying the multiple flaws in RANA's latest filing.

First, RANA fails to acknowledge that Article 2 and Article 6 address legally distinct terms, and therefore permit the use of different tests. Article 2 defines the legally significant phrase "extraditable offense," while Article 6 uses only the standalone, generic term "offense." As discussed in the United States' Reply, the plain meaning of the standalone term "offense" as used in Article

6(1) refers to the crime itself.[1]  (See Dkt. 79 at 20-21.) Crucially, RANA does not cite to any source stating that treaty partners are forbidden from negotiating an extradition treaty that provides for different tests in different provisions.  In fact, as the government already has detailed, the contrary point is true: Within the context of dual criminality and non bis clauses, the canons of construction governing these provisions permit such an approach.  (See id. at 36-38.)

Even if the Treaty's text were ambiguous, the Treaty partners' intent to create separate tests for dual criminality and non bis analyses is explicitly noted in the Treaty's technical analysis, (see id. at 23-25), which RANA attempts to disregard.  RANA's claim that the technical analysis should be given "no deference" because "it is merely ipse dixit from unidentified DOJ and DOS employees," (Dkt. 87 at 13), runs contrary to established Supreme Court precedent.  The Supreme Court has repeatedly reaffirmed that, while the interpretation of a Treaty begins with its text, courts may consult the drafting history of the Treaty, which is "entitled to great weight."  Sumitomo Shoji Am., Inc. v Avagliano, 457 U.S. 176, 184-85 & n.10 (1982)(citing Kolovrat v. Oregon, 366 U.S. 187, 194 (1961)); see Medellin v. Texas, 552 U.S. 491, 507 (2008) ("Because a treaty

---

[1] Article 6(2) of the Treaty, which is also part of the Treaty's Prior Prosecution provision, confirms the United States' position that the term "offense" in Article 6(1) demands the application of an elements-based test.  Article 6(2) reads, "Extradition shall not be precluded by the fact that the authorities in the Requested State have decided not to prosecute the person sought for the acts for which extradition is requested, or to discontinue any criminal proceedings which have been instituted against the person sought for those acts."  (Dkt. 66-1 at 20 (emphasis added).)  The use of the terms "acts," as opposed to "offense," serves as further evidence that these terms were intended to have different meanings.

3

ratified by the United States is an agreement among sovereign powers, we have also considered as aids to its interpretation the negotiation and drafting history of the treaty as well as the postratification understanding of signatory nations.") (internal quotations and citation omitted); El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 156 (1999) ("The reasonable view of the Executive Branch concerning the meaning of an international treaty ordinarily merits respect . . . ."). RANA does not even cite, let alone attempt to distinguish, this well-settled precedent.[2]

Moreover, Rana's proposed interpretation—that all instances of the term "offense" within the Treaty must mean the same thing and must refer to conduct—is inconsistent with the text of the Treaty. (See Dkt. 87 at 7-9). Even if RANA correctly points to sections of the Treaty where the term "offense" may refer to conduct, (see id. at 9 (citing Articles 4 and 5(1))), he ignores other parts of the Treaty where "offense" must refer to the charged crime. See, e.g., Article 2(4) (using phrase "acts constituting the offense"); Article 17(1)(a) (using phrase "offense based on the same facts"). These examples demonstrate that the specific language of the Treaty provision at issue controls that provision's analysis. As set forth in the United States' prior pleadings, Article 6(1) demands the application of an elements-based test.[3] (See Dkt. 67 at 51-56; 79 at 18-47.)

---

[2] Notably, RANA also ignores in his Surreply the longstanding principle that, if a court finds that a provision in an extradition treaty is ambiguous, the court should interpret that provision in favor of fulfilling the treaty's purpose—facilitating extradition. Factor v. Laubenheimer, 290 U.S. 276, 293-94 (1933).

[3] Significantly, RANA has not contested the Fourth Circuit's decision in Ye Gon v. Holt, 774 F.3d 207 (4th Cir. 2014), which held
*(footnote cont'd on next page)*

Second, RANA's attempt to avoid the application of the Blockburger elements-based test by relying on other areas of U.S. double jeopardy law falls flat. While RANA claims it is "odd" to apply the Blockburger elements-based without incorporating the rest of U.S. double jeopardy law into the interpretation of Article 6, (Dkt. 87 at 10), his characterization ignores the fundamental points that the Fifth Amendment's protection against double jeopardy does not apply to extradition proceedings and that there is no evidence these treaty partners intended to incorporate all of U.S. double jeopardy doctrine into the Treaty.[4]

Further, RANA's attempt to distinguish United States v. Luong, 393 F.3d 913 (9th Cir. 2004), is not compelling. (See Dkt. 87 at 10-11.) RANA correctly notes that Luong addressed RICO charges, but he fails to explain why that fact renders the guiding principles of that case inapplicable here. (See id.) Other than citing to two out-of-circuit cases, RANA makes no attempt to distinguish Luong's holding that Blockburger applies unless it "provide[s] insufficient protection" against double jeopardy concerns, i.e., when a successive conspiracy charge involves the same statute, a fact not present here. Luong, 393 F.3d at 916; see also Albernaz v. United States, 450 U.S. 333, 344 n.3 (1981) ("We noted in Brown v. Ohio, [432 U.S. 161 (1977)], that the established test for determining whether two

---

that a Prior Prosecution provision nearly identical to the one at issue here demanded an elements-based analysis.

[4] See In re Extradition of Rodriguez Ortiz, 444 F. Supp. 2d 876, 885 (N.D. Ill. 2006) ("[C]onstitutional protections applicable in criminal proceedings have been held inapplicable in the context of extradition."); cf. In re Extradition of Powell, 4 F. Supp. 2d 945, 951 (S.D. Cal. 1998) (citing Collins v. Loisel, 262 U.S. 426, 429 (1923)) (Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings).

offenses are the 'same offense' is the rule set forth in Blockburger . . . . It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause.").[5]

With respect to the substantive offenses with which RANA is charged in India, RANA reads too much into Pinkerton liability. (See Dkt. 87 at 11-12.) The United States did not address Pinkerton in its Reply because, for the other reasons stated therein, Pinkerton is irrelevant. As noted previously, the entire doctrine of U.S. double jeopardy law does not apply, the multifactor test upon which RANA's Pinkerton claim relies also does not apply, and the charge of which RANA was acquitted in the United States—conspiracy to provide material support to terrorism in violation of 18 U.S.C. § 2339A—is not a lesser included offense of any of the charges for which India seeks RANA's extradition. (See Dkt. 67 at 52-53; 79 at 28-32.) Indeed, 18 U.S.C. § 2339A is a distinct offense with wholly separate elements from the Indian charges (see Dkt. 67 at 52-53; 79 at 28-29), and RANA does not argue otherwise.[6]

Third, RANA's continued reliance on Headley's plea agreement is misplaced. (See Dkt. 87 at 13-14.) As an initial matter, RANA

---

[5] The two cases upon which RANA relies in his Surreply are not as compelling as he claims. In United States v. El-Mezain, 664 F.3d 467, 548 (5th Cir. 2011), the Fifth Circuit applied the multifactor test after holding that the defendant had been charged with two conspiracies based on "same or similar" statutes, which, as Luong states, would have rendered Blockburger ineffective. Neither El-Mazain nor United States v. Goff, 400 F. App'x 1 (6th Cir. 2010), address the premises in Luong and Albernaz that Blockburger is an effective double-jeopardy test when conspiracy charges are brought under separate statutes.

[6] Additionally, as the United States previously noted, the premise of RANA's argument is incorrect because the Indian substantive charges are not considered lesser included offenses of their conspiracy charges. (See Dkt. 79 at 32 n.13; 79-1 at 31-35.)

6

ignores that the plea agreement, by its very terms, explicitly binds only Headley and the United States Attorney's Office for the Northern District of Illinois ("USAO-NDIL"), thus precluding RANA from relying on it or otherwise obtaining any benefit from it.  Regardless, even if it were somehow relevant to this extradition, Paragraph 9, the relevant paragraph of the plea agreement, merely tracks the language of Article 6(1) in stating that Headley could not be extradited for the "offenses" for which he was convicted.  The bar on extradition tied to Headley's conduct falls outside the scope of Article 6.  (See Dkt. 79 at 40-41.)

To the extent RANA relies on a statement made during Headley's plea hearing, (see Dkt. 87 at 13), his reliance is improper because the plea agreement itself says that only the written agreement controls.  (See Dkt. 16-6 at 30, ¶ 18.)  Moreover, the statement upon which RANA relies is ambiguous at best.  However, even if USAO-NDIL took the position that Article 6 of the Treaty barred extradition for conduct that was subject to prosecution in the United States, that statement is not an accurate representation of what the Treaty means. The Treaty's meaning is derived from its text, applicable negotiating history, and relevant case law, all of which direct the application of an elements-based test.  (See Dkt. 67 at 51-56; 79 at 18-47.)  It is not derived from a single, ambiguous oral statement from an official not charged with, or otherwise participating in, negotiating extradition treaties on behalf of the United States.  Lest there be any doubt, the United States' position in the instant case represents what is, in its view, the interpretation most faithful to the Treaty's text and purpose.  That position has been developed in consultation with both the U.S. Department of State's Office of the

7

1  Legal Adviser and the U.S. Department of Justice's Office of
2  International Affairs.7  (See Decl. of John J. Lulejian, dated
3  04/12/2021 ("Lulejian Decl."), at ¶ 2.)
4      For the reasons set forth herein and in the United States' prior
5  pleadings, the United States respectfully urges the Court to find
6  that Article 6(1) of the Treaty does not bar RANA's extradition to
7  India.8

    **B.   The Probable Cause Requirement is Satisfied**

9      In his Surreply, RANA's sole claim pertaining to probable cause
10 is that the United States wrongly stated the Court's authority to
11 assess Headley's credibility.  (See Dkt. 87 at 16-17.)  On at least
12 one point, RANA has misinterpreted the United States' position, and
13 the parties agree:  The canon against making credibility

---

[7] To the best of government counsel's knowledge, neither the U.S. Department of State's Office of the Legal Adviser nor the U.S. Department of Justice's Office of International Affairs has previously advocated in litigation for an interpretation of Article 6 of the Treaty that is contrary to the one taken in the instant matter.  (See Lulejian Decl. at ¶ 2.)  Indeed, as another court noted in an extradition case, "The Department of State [] has long taken the position that the term 'offense' encompasses only crimes whose elements are identical and crimes that constitute lesser offenses." Elcock v. United States, 80 F. Supp. 2d 70, 80 (E.D.N.Y. 2000).

    On its face, RANA's apparent attempt to obtain attorney work product and/or privileged communications is inappropriate. E.g., Fed. Trade Comm'n v. Warner Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)) ("[The deliberative process] privilege permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.").

[8] While RANA reasserts some of his claims about the application of international and Indian national law to this case, he offers nothing new.  RANA's complaint that the United States does not place the same emphasis on the Vienna Convention on the Law of Treaties ("VCLT") as his expert, ignores the fact that the United States' interpretation of the Treaty is consistent with its object and purpose. Cf. VCLT, art. 31(1).  As to RANA's other complaints about international and Indian law, the United States rests on its prior arguments on these issues.  (See Dkt. 79 at 42-47.)

8

determinations in extradition proceedings does not mean the Court must blindly accept India's allegations of RANA's guilt as <u>per se</u> evidence of probable cause. While the materials in the extradition request should generally be accepted as true, the Court should consider whether that evidence satisfies the U.S. probable cause standard.

Nevertheless, contrary to RANA's suggestion, inconsistencies in the record generally will not defeat a probable-cause determination. As the Ninth Circuit and other courts have recognized, purported "inconsistencies and discrepancies" in foreign documents submitted in support of extradition are "of no consequence if there exists in those documents 'any' other sufficient competent evidence" to establish probable cause. <u>United States ex rel. Sakaguchi v. Kaulukukui</u>, 520 F.2d 726, 728 (9th Cir. 1975); <u>see also</u> <u>Sainez v. Venables</u>, 588 F.3d 713, 718 (9th Cir. 2009) (rejecting argument that "inconsistencies [in witness statements] preclude[d] a finding of probable cause" where "the record provide[d] ample competent evidence"). As set forth in the United States' prior pleadings, the extradition request contains sufficient evidence to establish probable cause, and RANA has not pointed to any evidence in the record that obliterates India's presentation of probable cause. (<u>See</u> Dkt. 67 at 45-50; 79 at 55-58.)

**III. CONCLUSION**

For the reasons set forth above and in its prior pleadings, the United States respectfully requests the certification of RANA's extradition to India for the Secretary of State's decision on his surrender.

9

**DECLARATION OF JOHN J. LULEJIAN**

I, John J. Lulejian, declare as follows:

1. I am an Assistant United States Attorney and have been assigned to prosecute <u>United States v. Tahawwur Hussain Rana, a Fugitive from the Government of the Republic of India</u>, Case No. 2:20-CV-07309-DSF (JC). I make this declaration in support of the United States' Surrebuttal in Support of its Request for Certification of Extradition.

2. Based on conversations with colleagues at the U.S. Department of Justice's Office of International Affairs ("OIA"), I am informed and believe that neither the U.S. Department of State's Office of the Legal Adviser nor OIA previously has advocated in litigation for an interpretation of Article 6 of the U.S.-India Extradition Treaty (the "Treaty") that is contrary to the one taken in this matter. Further, the United States' position with respect to the interpretation of the Treaty was developed in consultation with both the U.S. Department of State's Office of the Legal Adviser and OIA.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this <u>12th</u> day of April 2021, at Los Angeles County, California.

*/s/ John J. Lulejian*
JOHN J. LULEJIAN